# Reilly, Appellant, *v.* Wilkes-Barre.

*Contracts — Municipalities — Sewer construction — Proposals — Specifications—"Unit prices."*

A contractor agreed to furnish all labor and materials necessary for the laying of sewer pipes on certain streets in a city, according to plans and specifications and plaintiff's proposal attached to the contract. Defendant agreed to pay for completing said work in accordance with the plans and specifications $48,980.59. On the proposal was a notice "bidders will fill in the cost per foot or yard of each item as indicated on the above blank, carrying out the total cost of such items and add the bid, showing total cost of work, according to their proposal." It was also provided "all work and materials to be paid for shall be measured by the engineer and his assistants according to the plans and specifications and the lines given on the ground." Plaintiff contended that the city was liable for the total sum of $48,980.59. The court charged that defendant was liable not for the total amount but for the aggregate actual measurements at the prices specified. *Held,* plaintiff's proposal was a part of the contract, the charge of the court was proper and a verdict in accordance therewith was sustained.

Argued April 12, 1917. Appeal, No. 104, Jan. T., 1917, by plaintiff, from judgment of C. P. Luzerne Co., June T., 1915, No. 351, on verdict for plaintiff, in case of C. M. Reilly v. City of Wilkes-Barre. Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit on a contract.

FULLER, P. J., filed the following opinion:

The action was brought to recover a balance claimed on contract for building a sewer.

By that contract, dated October 25, 1912, plaintiff agreed to furnish all labor and materials to excavate and back-fill trenches and to lay sewer pipes therein, on certain streets in the City of Wilkes-Barre according to plans and specifications and plaintiff's proposal on file on the city office, and attached to the contract; and the defendant agreed to pay for completing said work in accordance with plans and specifications $48,980.59 in the manner provided by the specifications. Thus the proposal and specifications became a part of the contract and must be considered in construing its terms.

In the proposal the plaintiff offered "to excavate and back-fill sewer trenches and to furnish sand and cement and lay pipe in trenches in accordance with plans and specifications of the same for the following prices, and in greater or smaller quantities, viz:......"

Then follows some seventeen items specifying different lengths and depths of trenches, cubic yards of different material such as hard-pan, rock, shale and slate, length and diameter of pipes, number of manholes, etc., with unit prices per lineal foot, cubic yard and manhole, all carried out, footed up and added together, amounting to the said sum of $48,980.59.

This proposal was on a standard printed blank used by the city, and contained the following: "Bidders will fill in the cost per foot or yard of each item as indicated on the above blank, carry out the total cost of such items, and add the bid showing total cost of work according to their proposal"; as was done in this case.

It was also provided, "all work and materials to be paid for shall be measured by the engineer and his assistants according to the plans, specifications, and the lines given on the ground."

It was also provided that in rock work certain con-

siderations should determine whether the estimate should be for rock, shale or slate; "these estimates and the decision and judgment upon which they are based to be final and conclusive."

It was also provided that at the end of each month during the progress of the work the engineer shall make an estimate of the total amount of work during that month and the valuation thereof at the prices stipulated and recorded in the contract, which estimate shall be a warrant for payment of ninety per cent. (90%), the other ten per cent. (10%) to remain unpaid until completion, and then to be payable within ninety days from completion and acceptance.

The plaintiff received payments on monthly estimates of the engineer from time to time, twenty-three in all, forming a connected series, with balances carried forward from one to the other, based upon actual measurements and upon prices specified in the proposal, amounting altogether to $34,046.04.

Ten per cent. was retained out of each monthly estimate as agreed, and upon completion and acceptance of the work by the city, December 9, 1914, the final estimate was $4,971.59, which the city offered and still offers to pay.

There were some minor questions in the case which are not in controversy at this time and need not be mentioned or considered.

The plaintiff in substance claimed that on his construction of the contract he was entitled to the flat sum of $48,980.59, regardless of measurements, with credit of $34,046.04, leaving a balance of $14,934.55, subject to some further credit connected with the minor questions just mentioned.

The defendant, on the other hand, claimed that on its construction of the contract the limitation of liability was actual measurements and specified prices, that is $39,017.63, less payments $34,046.04, leaving $4,971.59,

as set forth in the final estimate above mentioned, with some addition thereto connected with the minor questions aforesaid.

Thus the controversy involves a construction of the contract as between $48,980.59, claimed by the plaintiff, and the unit basis claimed by the defendant.

In our charge to the jury we adopted and we still hold to the latter.

The defendant offered evidence of a contemporaneous similar contract in which the plaintiff himself adopted and acted upon the defendant's construction, but we rejected the evidence on the assumption, which we still make, that the contract taken as a whole was free from ambiguity.

Plainly, we think, the contract was to do the work for $48,980.59 if the measurements amounted to so much at the specified unit prices.

The measurements stated in the proposal were estimated as closely as they could be in advance. If they fell short, the cost would be correspondingly less; if they went above, the cost would be correspondingly more.

No other construction would be fair to either party.

No other construction accords with the language of the different provisions heretofore quoted, accompanied by the specification of prices.

Why specify prices or measurements "in greater or smaller quantities" if a flat payment of the total amount is contemplated?

Without further discussion, which the case no doubt deserves, but which we have not the time to bestow, we concur with the trial judge that the contract clearly contemplates payment not of a flat $48,980.59, but for aggregate actual measurements on prices specified.

Verdict for plaintiff for $6,411.41 and judgment thereon.   Plaintiff appealed.

*Errors assigned* were instructions to the jury.

*John McGahren,* with him *R. B. Alexander,* for appellant.

*Evan C. Jones,* with him *Charles F. McHugh,* for appellee.

PER CURIAM, May 14, 1917:

The proposal of the plaintiff to the defendant to do the work for which he bid and the specifications upon which it was based, became parts of the contract upon which he brought this action. The proposal was to do the work and furnish materials at an estimated price for certain items, which prices were to be paid for "greater or smaller quantities." The contract was correctly construed by the court below as imposing "liability upon the city not for the flat sum of $48,980.59, as claimed by the plaintiff, but for such less or larger sum as would result from applying the specified unit rate prices to the actual measurements of work done, as claimed by the defendant."

Judgment affirmed.